GREENBERG TRAURIG, LLP
Nina D. Boyajian (SBN 246415)
*Nina.Boyajian@gtlaw.com*
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendant Kohler Co.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| MARTIN BELTRAN, as an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KOHLER CO.,<br><br>Defendant. | Case No. 4:25-CV-09633-HSG<br><br>**DEFENDANT KOHLER CO.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Declaration of Jacob Gallipeau in Support of Motion to Dismiss; [Proposed] Order Granting Motion to Dismiss; Request for Judicial Notice in Support of Motion to Dismiss; Declaration of Nina D. Boyajian in Support of Request for Judicial Notice; and [Proposed] Order Granting Request for Judicial Notice filed concurrently]*<br><br>Date: March 5, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor<br><br>Action Filed: November 7, 2025<br><br>Judge: Hon. Haywood S. Gilliam, Jr. |

**NOTICE OF MOTION AND MOTION TO DISMISS:**

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 5, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Haywood S. Gilliam, Jr., United States District Judge for the Northern District of California, located in Courtroom 2, at Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, 4th Floor, Oakland, California 94102, Defendant Kohler Co. ("Kohler") will, and hereby does, move the Court for an order dismissing the Complaint filed by Plaintiff Martin Beltran pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has not pled, and cannot establish, a concrete harm under Article III, and because Plaintiff fails to state a claim upon which relief may be granted. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Jacob Gallipeau and Request for Judicial Notice, and all pleadings, arguments, and matters before the Court.

**STATEMENT OF RELIEF SOUGHT**

Kohler seeks an order dismissing Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff does not allege, and cannot establish, an Article III injury. The threshold jurisdictional defect requires dismissal of the Complaint. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ."). Should the Court reach the merits of Plaintiff's claims, however, Kohler seeks dismissal under Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to allege sufficient facts to state a plausible claim for five reasons:

(1) The Complaint fails in its entirety because Plaintiff fails to satisfy Federal Rule of Civil Procedure 8 and fails to allege facts sufficient to state any claim.

(2) The claims for invasion of privacy and intrusion upon seclusion in the Complaint fail because Plaintiff fails to allege what information Kohler purportedly collected and disclosed about Plaintiff and thus fails to allege that (a) Plaintiff had a reasonable expectation of privacy in the data Kohler purportedly collected, and (b) Kohler's purported invasion of privacy was offensive.

(3) The claim for violation of Section 631 the California Invasion of Privacy Act ("CIPA") in the Complaint fails because Plaintiff does not allege that (a) the "contents" of his communications were intercepted "in transit," and (b) Kohler aided and abetted unlawful conduct by third parties.

(4) The claim for violation of Section 638.51 of CIPA in the Complaint based on the allegedly unlawful use of a "pen register" fails because, as alleged, the technology used by Kohler on its website was used to collect the "contents" of website visitors' communication even though, by definition, a "pen register" cannot capture "contents," and because that statute does not apply to Kohler's alleged use of internet-based technology to track users' communications.

(5) The claim for common law fraud, deceit, and/or misrepresentation in the Complaint fails because Plaintiff fails to allege sufficient factual matter of the alleged fraud to satisfy Rule 9's heightened pleading requirements and alleges no damages.

Dated: January 8, 2026 GREENBERG TRAURIG, LLP

By: */s/ Nina D. Boyajian*
Nina D. Boyajian
Attorneys for Defendant Kohler Co.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF THE ISSUES TO BE DECIDED ..... 3

III. STATEMENT OF RELEVANT FACTS ..... 3

- A. Plaintiff's Allegations ..... 3
- B. The Websites Blocked Third-Party Cookies After Plaintiff Clicked to "Reject All" Cookies. ..... 3

IV. PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY-IN-FACT ..... 4

- A. Standard for Motions to Dismiss Pursuant to Rule 12(b)(1) ..... 4
- B. Constitutional Requirements for Standing ..... 5
- C. Plaintiff Fails to Allege a Concrete Harm. ..... 5
- D. Plaintiff Cannot Establish a Concrete Harm. ..... 9

V. PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR RELIEF ..... 11

- A. Standard for Motions to Dismiss Pursuant to Rule 12(b)(6) ..... 11
- B. Plaintiff Fails to Satisfy Rule 8 Because He Alleges Sparse Facts About His Own Website Interactions, And He Fails to Allege Conduct Within the Limitations Period. ..... 11
- C. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ..... 13
- D. Plaintiff's Wiretapping Claim Under CIPA § 631 Fails. ..... 16
  1. Plaintiff Fails to Allege a Violation Of Section 631(a)'s Second Clause Because He Fails to Allege the "Contents" of His Communications Were Intercepted While "In Transit." ..... 16
  2. Plaintiff Also Does Not Allege a Violation of Section 631(a)'s Third Clause, Which Requires Facts Showing a Violation of the First or the Second Clause. ..... 19
  3. Plaintiff Does Not Allege Facts Showing That Kohler Aided And Abetted Anything. ..... 19
- E. Plaintiff's Pen Register Claim Under CIPA § 638.51 Fails. ..... 20
  1. The Third-Party Cookies Can Acquire "Contents" and, Thus, Are Not Pen Registers. ..... 21
  2. CIPA § 638.51 Applies Only to Tracking Technology Used on Telephones. ..... 21
  3. CIPA § 638.51 Does Not Bar a Website's Collection of Its Users' Information. ..... 23
- F. Plaintiff's Fraud, Deceit, and/or Misrepresentation Claim Fails. ..... 24

VI. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adler v. Community.com, Inc.*,
No. 21-cv-2416, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ........ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 11

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 11

*Belluomini v. Citigroup, Inc.*,
No. 13-cv-1743, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ........ 13, 14

*Beltran v. Drs. Med. Ctr. of Modesto*,
No. 23-cv-1670, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ........ 8, 12, 17

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 13, 16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 13

*Byars v. Sterling Jewelers, Inc.*,
No. 22-cv-1456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 10

*Carolus v. Nexstar Media Inc.*,
No. 24-cv-7790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ........ 14

*Ciero v. The Walt Disney Co.*,
No. 17-cv-8544, 2018 WL 11352373 (C.D. Cal. May 21, 2018) ........ 15

*Cody v. E. Gluck Corp.*,
No. 23-cv-2286, 2024 WL 4314187 (N.D. Cal. Sept. 26, 2024) ........ 12

*Cody v. Ring LLC*,
No. 23-cv-562, 2025 WL 240763 (N.D. Cal. Jan. 16, 2025) ........ 19

*Columbia Pictures, Inc. v. Bunnell*,
245 F.R.D. 443 (C.D. Cal. 2007) ........ 21, 23

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. Aug. 28, 2023) ........ 8, 9

*Cousin v. Sharp Healthcare*
681 F. Supp. 3d 1117, 1123-1124 (S.D. Cal. 2023) .......... 12, 14, 15

*Crano v. Sojern, Inc.*,
No. 25-cv-2600, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......... 18, 19

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 10, 11

*Dawidzik v. Tesla, Inc.*,
No. 25-cv-1982, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 8, 9

*DellaSala v. Samba TV, Inc.*,
No. 25-cv-3470, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .......... 14

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 15

*Doe v. Amgen, Inc.*,
No. 23-cv-7448, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) .......... 12, 13

*Doe v. Davita Inc.*,
No. 23-cv-1424, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) .......... 12

*Doe v. Eating Recovery Ctr. LLC*,
– F. Supp. 3d –, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 1, 8, 19, 23, 25

*Doutherd v. United Parcel Serv., Inc.*,
No. 21-15966, 2022 WL 17582527 (9th Cir. Dec. 12, 2022) .......... 24

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018) .......... 4

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-cv-0102, 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) .......... 20

*Findley v. Am. Home Mortg. Corp.*,
No. 10-cv-2885, 2010 WL 5169046 (E.D. Cal. Dec. 14, 2010) .......... 13

*Glinoga v. Sullivan Ent. Inc.*,
No. 25-cv-0707, 2025 WL 3035032 (S.D. Cal. Oct. 30, 2025) .......... 10, 11

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. Jul. 1, 2021) .......... 25

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 14

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................. 8, 13, 14, 16

*Harrill v. Emanuel Med. Ctr.*,
No. 23-cv-1672, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ................................... 11, 12, 14, 15, 17

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .................................................................. 17, 18, 20

*Hodes v. Van's Int'l Foods*,
No. 09-cv-1530, 2009 WL 10674101 (C.D. Cal. June 23, 2009) ........................................... 25

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................. 14, 15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................................................................. 24

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .................................................................. 6, 9, 11

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 24-cv-1119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) ........................................... 12, 17

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-1473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ........................................ 6, 7, 8, 10, 21

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .................................................................. 4, 11

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .................................................................. 18

*Lien v. Talkdesk, Inc.*,
No. 24-cv-6467, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ........................................... 8

*Lightoller v. JetBlue Airways Corp.*,
No. 23-cv-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ........................................... 8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................. 14

*Magney v. Cnty. of Humboldt*,
No. 17-cv-2389, 2018 WL 1156817 (N.D. Cal. Mar. 5, 2018) ........................................... 13

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .................................................................. 16

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .................................................................. 16

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 6, 7

*Mitchener v. CuriosityStream, Inc.*,
No. 25-cv-1471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........ 7, 9, 21

*O'Donnell v. U.S. Bancorp Equipment Finance, Inc.*,
No. 10-cv-0941, 2010 WL 2198203 (N.D. Cal. May 28, 2010) ........ 13

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ........ 11

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) ........ 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 5, 6, 7, 8, 9, 10

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-cv-402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ........ 15

*Price v. Converse, Inc.*
– F. Supp. 3d –, 2025 WL 3295119 (C.D. Cal. Sep. 30, 2025) ........ 8

*Ramos v. Gap, Inc.*,
No. 23-cv-4715, 2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ........ 16, 17

*Ramos v. Gap, Inc.*,
No. 23-cv-4715, 2025 WL 2144837 (N.D. Cal. July 29, 2025) ........ 7, 16, 17, 19

*Rodriguez v. Brushfire Recs.*,
No. 25-cv-9797, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 7, 10, 15

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 7, 8

*Rodriguez v. Holder, Jr.*,
619 F.3d 1077 (9th Cir. 2010) ........ 23

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 4

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) ........ 4

*Segen v Rickey*,
No. C07–02917, 2008 WL 590505 (N.D. Cal. Feb. 29, 2008) ........ 21

*Smidga v. Spirit Airlines, Inc.*,
No. 22-cv-1578, 2024 WL 1485853 (W.D. Pa. Apr. 5, 2024) ........ 11

*Smith v. YETI Coolers, LLC*,
No. 24-cv-01703, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025) .......... 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 4, 5

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 13

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
830 F. App'x 821 (9th Cir. 2020) .......... 4

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22-cv-2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 14

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-7465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

*U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit. Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995) .......... 22

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 18, 19

*Valenzuela v. The Kroger Co.*,
No. CV 22-6382, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 18, 20

*Wooten v. BioLife Plasma Services L.P.*
No. 25-cv-99, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......... 9

*Wright v. TrueCare Prop. Holdings, LLC*,
No. 25-cv-786, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) .......... 17

*In re Zoom Video Communs. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) .......... 24

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 6, 7, 8, 14, 16, 17, 20

**State Cases**

*Casillas v. Calvin Klein, Inc.*,
No. 25STCV04499, 2025 WL 3529009 (Super. Ct. Nov. 25, 2025) .......... 21

*Casillas v. Trans. Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Super. Ct. Sep. 9, 2024) .......... 22, 23

*Harrott v. Cnty. of Kings*,
25 Cal. 4th 1138 (2001) ........................................................................................... 23

*Hill v. Nat'l Collegiate Athletic Ass'n.*,
7 Cal. 4th 1 (1994) ................................................................................................ 13

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Super. Ct. Mar. 13, 2024)............................. 23

*People v. Reynoza*,
15 Cal. 5th 982 (2024) ........................................................................................... 23

*People v. Williams*,
17 Cal. 5th 99 (2024) ............................................................................................. 23

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Super. Ct. Apr. 1, 2025) ............................. 21

*Rodriguez v. Sparc Grp., LLC*,
No. 24STCV26946, 2025 Cal. Super. LEXIS 41697 (Super. Ct. Jul. 9, 2025)............. 24

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Super. Ct. Jan. 27, 2025) ............................... 22

*Scharon v. Paramount Glob.*,
No. 25STCV10585, 2025 WL 2996812 (Super. Ct. Oct. 03, 2025)...................... 22, 23

*Shulman v. Group W Productions, Inc.*,
18 Cal. 4th 200 (1998) ........................................................................................... 15

*Tavernetti v. Super. Ct.*,
22 Cal.3d 187 (1978) .............................................................................................. 16

**Federal Statutes**

18 U.S.C. § 3123............................................................................................................ 22

18 U.S.C. § 3123(b)(1)(A)................................................................................................ 22

**State Statutes**

Cal. Penal Code § 631........................................................................... 2, 3, 17, 19, 20, 21

Cal. Penal Code § 631(a) ............................................................................ 16, 17, 18, 19, 20

Cal. Penal Code § 638.2(d) ................................................................................................ 23

Cal. Penal Code § 638.50(b) .............................................................................................. 21

Cal. Penal Code § 638.51(a) .............................................................................................. 22

Cal. Penal Code § 638.52 ..... 22
Cal. Penal Code § 638.52(b) ..... 22
Cal. Penal Code § 638.52(d) ..... 22

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Martin Beltran complains that information reflecting his visit to a website that sells kitchen, bathroom, and lighting fixtures is a violation of his privacy rights, among other things. But this lawsuit is not about privacy violations or fraud or deception; rather, it exists among scores of nearly identical lawsuits applying a 1967 statute to the routine use of website technologies, seeking to exploit the high statutory damages found in the California Invasion of Privacy Act ("CIPA"),[1] a criminal statute "enacted in 1967 to criminalize wiretapping and eavesdropping on confidential communications." *Doe v. Eating Recovery Ctr. LLC*, – F. Supp. 3d –, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). One court in this District recently described the language of CIPA as "a total mess." *Id*. "It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies. Indeed, we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute." *Id*.[2]

But the Court need not reach the lack of merit in Plaintiff's claims because he has not, and cannot, establish an Article III injury-in-fact necessary to maintain suit in federal court. The central theory underlying Plaintiff's claims is that he was deceived because, after he selected "Reject All" on the cookie banner on Defendant Kohler Co.'s ("Kohler") website, <u>www.kohler.com</u> ("Kohler Website"), the Kohler Website used third-party cookies that allegedly violate the 59-year-old CIPA statute to acquire and disclose Plaintiff's subsequent browsing activity for Kohler products. Compl. ¶¶ 84-88. Facially, Plaintiff has not alleged an injury from the mere acquisition of data about his mouse clicks to view Kohler products, which include common household products such as kitchen, bathroom, and lighting fixtures. Factually, the Kohler Website *adhered to* Plaintiff's request to opt out of third-party tracking. Specifically, after Plaintiff clicked "Reject All" on the cookie banner, the Kohler Website blocked the sharing of any further browsing data with Meta, TikTok, and Microsoft. *See* Declaration of Jacob Gallipeau ("Gallipeau Decl.") ¶¶ 3-8. Plaintiff thus lacks an Article III injury, and this

---

[1] While this species of alleged cookie-banner-failure case varies slightly from other CIPA cases because it includes allegations of fraud and deception, its viability depends on the application of CIPA to website tracking technologies to trigger CIPA's statutory damages penalties. In other words, without CIPA's financial penalties being applied to internet technologies, these lawsuits would undoubtedly disappear.

[2] Judge Chhabria found that the case before him, in which the plaintiff, like Plaintiff here, sought to impose CIPA liability on a website operator for using a third party to perform data analytics and targeted advertising, was "such a case." *Eating Recovery Ctr.*, 2025 WL 2971090, at *1.

deficiency cannot be remedied by amendment.

In addition to this threshold defect to federal jurisdiction, the Complaint fails for five main reasons:

(1) Plaintiff fails to satisfy Federal Rule of Civil Procedure 8. Plaintiff alleges that after he opted out of certain technologies and browsed the Kohler Website for "products," the Kohler Website still used tracking technologies to share Plaintiff's personal information with third parties Meta (Facebook), TikTok, and Microsoft Clarity. Despite stretching 51 pages, however, Plaintiff does not allege the date *he* visited the Kohler Website, the webpages *he* visited after allegedly opting out of third-party analytics and advertising cookies, the searches *he* entered (if any), or the products *he* browsed for on the Kohler Website after opting out. Instead, the Complaint relies on hypotheticals involving other Kohler Website users and recitations of legal elements, not facts. Thus, Plaintiff has not alleged a plausible claim.

(2) Plaintiff fails to state claims for invasion of privacy and intrusion upon seclusion because Plaintiff's mouse clicks to browse for Kohler's products, which are kitchen, bathroom, and lighting fixtures, is not information in which he possesses a reasonable expectation of privacy, and the disclosure of this mundane browsing activity is not highly offensive conduct.

(3) Plaintiff fails to state a wiretapping claim under CIPA § 631 because no facts show that the "contents" of his communications were intercepted by third parties while "in transit," let alone how Kohler supposedly aided and abetted any such third-party interceptions.

(4) Plaintiff fails to state a claim under CIPA § 638.51 for the unlawful use of a pen register because this claim contradicts his claim of wiretapping under CIPA § 631, since, by definition, pen registers do not capture the "contents" of communications, and because CIPA § 638.51 does not prohibit Kohler's use of technology to capture users' internet communications.

(5) Plaintiff fails to state a claim for fraud, deceit, and/or misrepresentation because his conclusory assertions of fraud do not come close to alleging the particular facts required to satisfy Rule 9(b), and he does not allege damages sufficient to support his claim.[3]

For these reasons, the Court should grant the motion and dismiss the Complaint with prejudice.

---

[3] While the cover page of the Complaint lists Unjust Enrichment among the claims asserted, no such claim is pled in the body of the Complaint.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Does Plaintiff allege or factually establish an injury-in-fact sufficient to confer Article III standing?

2. Does Plaintiff plausibly state claims for (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of CIPA § 631; (4) use of a pen register in violation of CIPA § 638.51; or (5) common law fraud, deceit, and misrepresentation?

## III. STATEMENT OF RELEVANT FACTS

### A. Plaintiff's Allegations

Kohler operates the Kohler Website, as well as www.robern.com and www.kallista.com (collectively, the "Websites"),[4] which provide users information about Kohler's bath, kitchen, and other consumer products. Compl. ¶¶ 1, 22. The Websites display to California users a cookie banner offering users the option to "Reject All" or "Accept All Cookies." *Id.* ¶¶ 25–27. The Websites' cookie banner is designed to block third-party cookies and other tracking technologies for those who opt out. *Id*.

Plaintiff alleges that, even after a user rejects all cookies, the Websites still transmit and store cookies from software providers Meta, TikTok, and Microsoft Clarity (the "Third-Party Cookies") on users' browsers. *Id.* ¶¶ 2–5, 16–34. The Websites allegedly cause the Third-Party Cookies to share users' interactions with the third parties, including page views, mouse clicks, information typed into form fields (search queries, contact information, payment details, etc.), unique user IDs, IP address-based geolocation, and other data. *Id.* ¶¶ 14–34.

Plaintiff alleges that, in "the last four years," he accessed the Kohler Website for "information about Kohler's products," at which time he selected "Reject All" on the cookie banner to opt out of third-party tracking. *Id*. ¶¶ 84–88. Nonetheless, the Kohler Website allegedly transmitted Third-Party Cookies to his browser after his opt-out, enabling Meta, TikTok, and Microsoft to capture his browsing information. *Id.* ¶¶ 89–91. Plaintiff does *not* allege that he bought anything on the Kohler Website, entered information into form fields on the Kohler Website, or ran any searches on the Kohler Website. Unsurprisingly then, Plaintiff does not allege that he was exposed to targeted ads following his visit to the Kohler Website.

### B. The Websites Blocked Third-Party Cookies After Plaintiff Clicked to "Reject All" Cookies.

Since August 2024 and at all relevant times since, the Websites present a cookie banner to users visiting

[4] Plaintiff alleges that Kohler owns and operates "ecommerce" websites www.robern.com and www.kallista.com in addition to the Kohler Website, and makes allegations concerning the Websites, but does not allege that he visited the other Websites. Compl. ¶¶ 1, 84.

from California. Gallipeau Decl. ¶¶ 3-6. The banner permits users to click buttons to "Reject All" or "Accept All Cookies," click "Cookie Settings" to access the Privacy Preference Center disclosure and turn off or on the use of Third-Party Cookies, or click "X" to close the banner. *Id.* ¶ 3, Ex. A.

The kinds of cookies and technology deployed on the Websites include "Strictly Necessary Cookies," "Analytics and Performance Cookies," "Targeting (Advertising) Cookies," and "Functional Cookies." *Id.* ¶ 4. Only the latter three kinds of cookies may be rejected. *Id.* If a user selects "Reject All" on the Kohler Website's banner (as Plaintiff alleges happened here), a first-party cookie stored by the Kohler Website on the user's browser is updated to record that the user has rejected Third-Party Cookies. *Id.* ¶ 5. Then, if the user subsequently browses for products on the Kohler Website, the Kohler Website's blocking script would have read the updated first-party preference cookie reflecting the user's chosen cookie settings, blocked the transmission of Third-Party Cookies, and prevented Meta, TikTok, and Microsoft from collecting information about Plaintiff's interactions with the Kohler Website. *Id.* ¶¶ 5-8.

## IV. <u>PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY-IN-FACT</u>

### A. Standard for Motions to Dismiss Pursuant to Rule 12(b)(1)

Plaintiff, as the party seeking to invoke the jurisdiction of an Article III federal court, bears "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). To meet that burden, Plaintiff must establish that he suffered a "concrete and particularized" "injury-in-fact." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) ("a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

A defendant may raise two kinds of jurisdictional challenges under Rule 12(b)(1): a facial attack which contends that the complaint fails, on its face, to adequately allege jurisdiction, and a factual attack, which "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). On a facial attack, a court accepts as true only the "well-pleaded factual allegations." *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020). On a factual attack, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**B. Constitutional Requirements for Standing**

To establish "the irreducible constitutional minimum" of standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id*. at 338 n.6 (quotation marks and citation omitted).

Under Article III, an "injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id*. at 425. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*. To that end, in *TransUnion*, the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 426. Rather, "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system," and a plaintiff must "demonstrate more than just a statutory violation when evaluating whether [he] has alleged a concrete injury." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791, 793 (9th Cir. 2025).

**C. Plaintiff Fails to Allege a Concrete Harm.**

Plaintiff's claims arise from the alleged disclosure of his mouse clicks and page views for Kohler products on the Kohler Website after he opted out of Third-Party Cookies. Even if data continued to be collected from Plaintiff after he opted out and continued navigating the website (which it did not), courts have long recognized, and the Ninth Circuit confirmed in *Popa*, that none of the data allegedly collected from Plaintiff—his mouse clicks and page views for Kohler products such as sinks and light fixtures on the Kohler Website and other, routinely collected metadata—is the type of "sensitive" information required to have the concrete injury necessary for Article III standing. *Id*. at 791.

In *Popa*, the Ninth Circuit confirmed there is no "per se rule" that "greenlight[s]" Article III standing any time "privacy statutes" are violated. *Id.* at 794. *Popa* applied this rationale to reject standing for a claimed

violation of a privacy statute involving facts comparable to those alleged here: Microsoft Clarity allegedly captured "over 30 different categories" of data, including every "URL," "click," and "keystroke," to "recreate [Popa's] entire visit"—*e.g.*, her "click[s] [for] certain products" to "brows[e] for pet supplies[.]" *Id.* at 786–87. The Ninth Circuit examined the "specific pieces of information" collected from Popa and concluded that she "identifie[d] no embarrassing, invasive, or otherwise private information" collected from her. *Id.* at 791.[5] Absent allegations that any "sensitive" information was acquired from Popa (*e.g.*, "medical or financial information"), the "monitoring of Popa's interactions" was not "remotely similar" to the common-law privacy "benchmark[s]"—invariably requiring "highly offensive" intrusions—that her alleged harm must resemble to satisfy standing. *Id.* at 791. Similarly, information about the type of kitchen and bathroom fixtures Plaintiff expressed an interest in can hardly be considered "sensitive" or "highly offensive."

Even before *Popa*, courts in this District regularly dismissed privacy claims because the acquisition of a user's nonsensitive website interactions inflicts no "concrete" injury. *E.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1177, 1179-83 (N.D. Cal. 2025) ("*Khamooshi I*"). This District has consistently recognized, and *Popa* confirms, that to determine standing, "courts 'make their decisions . . . based on the nature of the information at issue.'" *Id.* at 1178 (quoting *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)). This requires Plaintiff to "identify the 'specific personal information [he] disclosed that implicates a protectable privacy interest.'" *Id.* at 1179 (citation omitted). Here, Plaintiff alleges that he visited the Kohler Website to "obtain information about Kohler's products"; he alleges entering ***no*** searches, disclosing ***no*** personal information, and making ***no*** purchases. Compl. ¶ 84. Simply put, none of the information plausibly disclosed during Plaintiff's visit to the Kohler Website is private or personal enough to support Article III standing.

***First***, the metadata supposedly collected from Plaintiff—cookie IDs, IP address, device identifiers, etc.—is "record information," the collection of which cannot establish a concrete injury. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104, 1108 (9th Cir. 2014) (no "expectation of privacy" in "record information" like

[5] Similar to *Popa*, Plaintiff alleges that the Third-Party Cookies have the *capability* to record users' "search queries" and "information the user entered into the Websites' form fields" as well as "Event" data that tracks "specific actions" users take on the Websites (*e.g.*, "clicking a link or making a purchase"), Compl. ¶¶ 20, 43-44, but Plaintiff does not claim that he provided this information during his visit, *id.* ¶ 84. His speculation about the possible acquisition of such data is irrelevant to *his* standing. *See Popa*, 153 F.4th at 791 & n.5 ("To the extent [the] [ ] software could be offensive," Popa did not "link[ ] these potential, generalized harms to the operation of [the software] *vis-à-vis* Popa."); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-1473, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (dismissing CIPA claim for lack of standing where, even "though Plaintiff alleges that Defendants *could* gain 'additional information about [a] visitor such as name, date of birth, and address,'" he "fails to convert that hypothetical into concrete harm to *him*") (emphasis in original).

one's "name, address," and "subscriber name or identity"); *see also Rodriguez v. Brushfire Recs.*, No. 25-cv-9797, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (website's use of advertising tracker to allegedly acquire users' "IP addresses," "device identifiers such as cookies," "browser fingerprints, URL referrer," and "session identifiers" does "not cause the kind of harm that can be vindicated in federal court"). Countless courts have "concluded that internet users have no right to privacy in the metadata of their communication." *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-225, 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (plaintiff lacked standing for CIPA claims based on a website's alleged use of "tracking beacons" that collected plaintiff's "[IP] address," browser name [and] version," geolocation data, email address, mobile ad IDs," "social media identities, . . . [and] cookies" because such data constituted "metadata" in which "users have no right to privacy") (citing *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-1471, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (explaining "metadata" is "information *about [a] communication*, but *not the content of the communication* itself," and dismissing CIPA claim for lack of standing because only "metadata" was captured) (emphasis in original)).[6]

***Second***, although not plausibly alleged, *supra*, n.5, courts have soundly rejected that "an internet user's contact information . . . constitutes private information," and so the dissemination of this information causes no "injury" cognizable under Article III. *Id.*; *see also Kishnani*, 2025 WL 1745726, at *4 ("The mere 'collection of basic contact information' by 'software. . . [is] not [a] concrete harm[].'") (citation omitted). And far more personal information than a phone number, name, or email implicates no privacy harm nor standing. *See Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995-96 (9th Cir. 2023) (the "unlawful collection and retention" of "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views" does not "give[ ] rise to a concrete injury") (citation omitted); *Noom, Inc.*, 682 F. Supp. 3d at 864 (plaintiffs lack standing under CIPA where "the 'personal information' [visitors] inputted" is "basic contact information").

***Third***, the "tracking of [Plaintiff's] interactions" on the Kohler Website is not an "infringement of [a] privacy interest" that gives rise to standing. *Popa*, 153 F.4th at 791. The "collection and disclosure" of this data "to third parties . . . is 'routine commercial behavior'" and, therefore, "is not a 'highly offensive' intrusion" of

---

[6] Plaintiff concedes this information is "record information" in which he has no privacy interest. *Zynga*, 750 F.3d at 1008. He alleges that "[s]ome of the information" allegedly collected, like "IP addresses and user-agent information," does "not constitute the content of [his] . . . communications" with the Website. Compl. ¶ 149. However, ***all*** the information purportedly acquired from Plaintiff is "record information[.]" *Ramos v. Gap, Inc.*, No. 23-cv-4715, 2025 WL 2144837, at *3 (N.D. Cal. July 29, 2025) ("*Ramos II*") (Gilliam, J.). While URLs may be "contents" if they include a "query string" for entered "searches," Plaintiff does not allege making any searches. *Id.* at *4-7 ("Under Plaintiff's new theory," "any 'click' on a URL" would be a communication" protected under California law, but "the Ninth Circuit has not drawn such sweeping conclusions."); Compl. ¶ 84.

privacy. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citation omitted). Plaintiff's ordinary "shopping behavior" and information about "product preferences" is "not personal information," and "even if [Plaintiff's] browsing activity could . . . be[ ] connected" to his identity, the alleged tracking "here still wouldn't be enough" to provide Plaintiff with standing. *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. Aug. 28, 2023), *aff'd*, 148 F.4th 153 (3rd Cir. 2025); *see also Lien v. Talkdesk, Inc.*, No. 24-cv-6467, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) ("The information allegedly intercepted" by the software—"phone numbers and questions [plaintiffs] asked about store hours, events, and products"—is "not private or personal enough to confer standing" for CIPA claims.); *Lightoller v. JetBlue Airways Corp.*, No. 23-cv-361, 2023 WL 3963823, at *1 (S.D. Cal. June 12, 2023) (no standing for CIPA claims based on tracking website interactions to "obtain information on flight pricing").

The bottom line is the tracking of metadata, like IP addresses and cookie IDs, and a user's basic contact information—even when tracked in combination with nonsensitive browsing activity like Plaintiff's mouse clicks to view webpages on Kohler products such as bathroom and lighting fixtures—does not rise to a concrete harm. *See Popa*, 153 F.4th at 791 (the capture of Popa's web browsing behavior is "quite different from the hypotheticals set out in the Restatement," such as "'taking intimate pictures [of a neighbor] with a telescopic lens'") (citation omitted).[7] Plaintiff's claim would have been vulnerable to dismissal before *Popa*, but *Popa* and its progeny remove all doubt.

Following *Popa*, courts have routinely dismissed CIPA claims based on a website's use of third-party software to capture basic website interactions, even if used for targeted advertising. *See, e.g.*, *Culligan*, 2025 WL 3064113, at *5; *Dawidzik v. Tesla, Inc.*, No. 25-cv-1982, 2025 WL 3786963, at *1, *5 (C.D. Cal. Dec. 29, 2025) (no standing based on alleged use of "advertising" pixels to acquire IP addresses, browser/device type, pages visited, URLs, cookie/ad IDs, and more, "as Plaintiff has not alleged anything more than 'basic identification and address information,' i.e., 'record information'" that was "similar to those [categories of data] rejected in *Popa*") (quoting *Zynga*, 750 F.3d at 1108-09). For instance, *Price v. Converse, Inc.* dealt with the

[7] *See also Eating Recovery Ctr.*, 2025 WL 2971090, at *3 n.3 ("[S]tanding in privacy cases based on browsing activity depends on whether the activity is private or personal enough," *e.g.*, no standing if "plaintiff was shopping for a football jersey" *versus* standing if plaintiff was "shopping for eating disorder services."); *Kishnani*, 2025 WL 1745726, at *4 ("The mere 'collection of basic contact information' by 'software. . . [is] not [a] concrete harm[].'") (citation omitted); *Beltran v. Drs. Med. Ctr. of Modesto*, No. 23-cv-1670, 2025 WL 1635467, at *2-3, *7-8 (E.D. Cal. June 9, 2025) (use of the Meta Pixel to collect IP addresses, Facebook IDs, and search terms "related to health conditions" did not invade plaintiff's privacy).

alleged use of the TikTok script to acquire "device, browser," and "geographic" information as well as "referral [URL] tracking" which TikTok allegedly used to "deanonymize" plaintiff and show him "highly personalized" ads. – F. Supp. 3d –, 2025 WL 3295119, at *1, *3 (C.D. Cal. Sep. 30, 2025). These allegations were "insufficient to establish a 'concrete injury,'" as plaintiff "d[id] not plead" TikTok's interception of such data "'caused h[im] to experience any kind of harm . . . remotely similar to the highly offensive interferences or disclosures that were actionable at common law,'" as Article III requires. *Id*. at *3 (quoting *Popa*, 153 F.4th at 791, 792).

*Khamooshi v. Politico LLC* is also on point. *See* No. 24-cv-7836, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ("*Khamooshi II*"). There, this District relied on *Popa* to dismiss CIPA claims premised on the alleged use of advertising trackers to capture plaintiff's IP addresses, browsing activity, geolocation data, and other "device fingerprints" because, like Plaintiff's allegations here, those allegations "identified 'no embarrassing, invasive, or otherwise private information" that could confer standing. *Id*. at *2, *3 (quoting *Popa*, 153 F.4th at 791). Similarly, in *Wooten v. BioLife Plasma Services L.P.*, another instructive case following *Popa*, the court held, although the plaintiffs alleged "the third-party trackers have the capability" to "engage in . . . targeted advertising," plaintiffs lacked an "actual injury" because they failed to "allege that they were subject to any such targeted advertising." No. 25-cv-99, 2025 WL 2979619, at *1-2, *3 (E.D. Cal. Oct. 22, 2025) (dismissing CIPA claims under *Popa* where defendants allegedly used third-party trackers to collect email and IP addresses and website-visit information, enabling the third parties to "link users' identities" across websites and "feed them advertisements," since the "collection and dissemination" of IP and email addresses was not highly offensive conduct). Here too, Plaintiff alleges no actual injury caused by the Third-Party Cookies, *id*., nor does he allege that any "embarrassing, invasive, or otherwise private information" was collected from him (nor could he in light of the content and nature of the Kohler Website). *Khamooshi II*, 2025 WL 2822879, at *3.

Plaintiff's standing here is not a close call. As in the many Article III dismissals issued both before and after *Popa*, Plaintiff alleges only "futil[e]" metadata and non-content shopping behavior was tracked, *Mitchener*, 2025 WL 2272413, at *5; *Cook*, 689 F. Supp. 3d at 66, and Plaintiff cannot establish standing based on the collection of "sensitive" information that other users *besides* Plaintiff may have provided. *Popa*, 153 F.4th at 791. Accordingly, the Complaint should be dismissed because Plaintiff alleges no Article III harm.

**D. Plaintiff Cannot Establish a Concrete Harm.**

On its face, Plaintiff's allegations fail under *Popa* and do not establish the concrete injury required for

Article III standing. But the Complaint fails for a more fundamental—and incurable—reason: as a factual matter, the Kohler Website *honored* Plaintiff's decision to reject cookies from collecting additional browsing information. After Plaintiff clicked "Reject All" on the banner, and then continued to navigate on the Kohler Website, the Kohler Website did not transmit Third-Party Cookies, and Plaintiff's subsequent interactions with the Kohler Website to browse for Kohler products were not shared with Meta, TikTok, or Microsoft Clarity. Gallipeau Decl. ¶¶ 5-8. While Plaintiff fails to allege facts about his browsing session on the Kohler Website, if, for example, he subsequently clicked on a link or entered a search query to find and learn more about a specific Kohler product, the Kohler Website would have blocked the transmission of data relating to Plaintiff's link click or entered search query to third parties, including Meta, TikTok, and Microsoft Clarity. *Id*. ¶¶ 7, 8.

Setting aside Plaintiff's refuted allegations that the banner deceived him by continuing to transmit his further browsing data to third parties, the Complaint is reduced to nothing more than the disclosure of Plaintiff's visit to the Kohler Website. Compl. ¶ 89. This bare collection of a page visit, unaccompanied by any misrepresentations on which Plaintiff could rely, falls far short of an Article III injury. *See Popa*, 153 F.4th at 791; *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1, *2 (9th Cir. Dec. 17, 2024) (because plaintiff did not allege "she made a purchase, entered text, or took any actions other than simply opening the webpage," she failed to allege the "contents" of her communication have been collected and thus "failed to clearly allege facts demonstrating that she "suffered an injury in fact") (citation and quotation marks omitted); *see also Kishnani*, 2025 WL 1745726, at *4 ("The mere collection of . . . information by software" where "the plaintiffs merely visited the website[ ] are not concrete harms.") (citation and quotation marks omitted); *Brushfire Recs.*, 2025 WL 3692144, at *7 (same where the "only allegation about [plaintiff's] own interactions . . . is that she visited the website").

When presented with comparable Rule 12(b)(2) factual challenges, courts have readily dismissed privacy claims for lack of standing. *See, e.g.*, *Glinoga v. Sullivan Ent. Inc.*, No. 25-cv-0707, 2025 WL 3035032, at *3-4 (S.D. Cal. Oct. 30, 2025) (granting dismissal of CIPA and Video Privacy Protection Act claims for lack of standing where defendant mounted a factual attack supported by declarations showing that plaintiff did not view videos or use search terms); *Byars v. Sterling Jewelers, Inc.*, No. 22-cv-1456, 2023 WL 2996686, at *2 (C.D. Cal. Apr. 5, 2023) (granting factual attack on CIPA claims based on the alleged collection of plaintiff's online chat conversations after defendant "produce[d] uncontroverted declaration testimony of its employee . . .

who searched Defendant's archived chat transcripts and returned . . . no evidence that Plaintiff engaged in any communication with Defendant's chat feature").[8]

Kohler "has presented evidence that Plaintiff did not suffer a concrete injury" to his privacy. *Glinoga*, 2025 WL 3035032, at *4; *see also Leite*, 749 F.3d at 1121 (a factual challenge to standing permissibly contests the truth of the plaintiff's factual allegations by introducing evidence outside the pleadings"). As such, Plaintiff cannot show an Article III injury. Because "amendment would be futile," Plaintiff's claims must be dismissed without leave to amend. *Khamooshi II*, 2025 WL 2822879, at *4. The Court's analysis should end here.

## V. PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR RELIEF

### A. Standard for Motions to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Courts must generally accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B. Plaintiff Fails to Satisfy Rule 8 Because He Alleges Sparse Facts About His Own Website Interactions, And He Fails to Allege Conduct Within the Limitations Period.

A plaintiff cannot state a claim based on an "overarching theory" of how the technology operates, particularly when, as here, the plaintiff fails to allege sufficient facts about his own interactions and communications on the website. *Harrill v. Emanuel Med. Ctr.*, No. 23-cv-1672, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025); *see Daghaly*, 2024 WL 5134350, at *1 (affirming dismissal of CIPA claim because plaintiff's "allegations about her own interactions with the [] website [we]re sparse" and did "not allege that she herself actually made any communications that could have been intercepted once she had accessed the website.").

---

[8] *See also Smidga v. Spirit Airlines, Inc.*, No. 22-cv-1578, 2024 WL 1485853, at *5 (W.D. Pa. Apr. 5, 2024) (dismissing wiretapping claims where plaintiffs alleged that they entered "specific information, vis-à-vis credit card on [Spirit Airline]'s website based on "Spirit's sworn assertions that no personalized data was recorded," leaving plaintiffs "without a concrete injury to support Article III standing").

Plaintiff's overarching theory is that tracking technologies on the Websites improperly collected personal information after visitors opted out. *See* Compl. ¶¶ 13-34. Plaintiff then spends 15 pages describing how these tracking technologies work generally, but he alleges *no* facts connecting these generalized allegations to his own activities, which involved only one of the three alleged Websites. He does not allege that he entered personal or sensitive data on the Websites, does not allege any searches he entered on the Websites, and does not identify any of the webpages he viewed. Instead, Plaintiff generally alleges that he "visited the Kohler Website to seek and obtain information about Kohler's products" and "Defendant permitted the Third Parties to track and collect [his] Private Communications as he browsed the Kohler Website." *Id.* ¶¶ 84, 90. These vague statements do not state a claim. *See Cody v. E. Gluck Corp.*, No. 23-cv-2286, 2024 WL 4314187, at *1, *2 & n.2 (N.D. Cal. Sept. 26, 2024) (Gilliam, J.) (dismissing CIPA claim based on the alleged capture of plaintiff's "chat communications" where, "[c]ritically, Plaintiff does not allege that she actually used the chat feature on Defendant's website") (following amendment, "Plaintiff will need to provide factual detail, such as the *content* of her chats with Defendant") (emphasis added).[9]

For example, in *Harrill*, the court held allegations that plaintiff used defendant's website to search for information related to health conditions and to schedule treatment were insufficient to state a claim because plaintiff did not identify "what information she provided to Defendants via her browsing activity on the Website and thus what information was subsequently transmitted" to third parties. 2025 WL 1635428, *4, *12. As the court explained, while plaintiff's complaint spanned dozens of pages, "only one paragraph is dedicated to detailing Plaintiff's interactions with Defendants' Website," and it did not identify the information provided while browsing. *Id.* at *4. Likewise, in *Cousin v. Sharp Healthcare*, plaintiffs' allegations that they used defendant's website to "research . . . doctors," "look for providers," and "search for medical specialists" were insufficient. 681 F. Supp. 3d 1117, 1123-1124 (S.D. Cal. 2023). The same is true for Plaintiff's allegations about his own Kohler Website interactions, which are sparse as to what information he entered (if any) and what

[9] *See also Beltran*, 2025 WL 1635467, at *5 (allegations that plaintiffs used website "to search for information related to symptoms or conditions they were experiencing" held "deficient" to state privacy and CIPA claims); *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 24-cv-1119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (allegations that plaintiff used defendant's website "to 'browse[ ] and book a Hard Rock hotel' . . . lacked sufficient factual support" to state a CIPA claim); *Doe v. Amgen, Inc.*, No. 23-cv-7448, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024) (dismissing privacy claims because plaintiff failed to identify what personal information was allegedly collected); *Doe v. Davita Inc.*, No. 23-cv-1424, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) (dismissing complaint because plaintiffs' allegations that they used "Online Platforms" to "research different types of dialysis" did "not explain what specific information they provided").

information was collected and shared (if any), and non-existent with respect to the other Websites. Thus, because "Plaintiff failed to plausibly plead facts to sustain any of h[is] claims, which all rely on the same underlying theory that . . . personal information [was collected] and disclosed [] to unauthorized third parties," each claim should be dismissed. *Amgen*, 2024 WL 575248, at *3.

Plaintiff also does not allege "approximately when the actionable misconduct occurred," which is another reason the Complaint does not satisfy Rule 8. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Courts "dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *Id.* at 135 (collecting cases). Plaintiff alleges only that he visited the Kohler Website within "the last four years" (Compl. ¶ 84), but this vague period does not provide "fair notice" or even enough information to assess whether Plaintiff's claims are timely. *Brodsky*, 445 F. Supp. 3d at 135. This is especially so because, under CIPA, "the applicable statute of limitations is one year," *id.* at 134, and the "statute of limitations for Plaintiff['s] intrusion upon seclusion and invasion of privacy claims is two years," *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021). "Because [Plaintiff] do[es] not allege the dates of the alleged illegal conduct, [he] ha[s] failed to establish that [his] claims were brought within the statute of limitations," and his claims must be dismissed. *Findley v. Am. Home Mortg. Corp.*, No. 10-cv-2885, 2010 WL 5169046, at *3 (E.D. Cal. Dec. 14, 2010).[10]

**C. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.**

Claims for invasion of privacy and intrusion upon seclusion have similar elements and are considered together. *See, e.g.*, *Hammerling*, 615 F. Supp. 3d at 1088.[11] To determine whether plaintiffs have stated these claims, courts evaluate whether the alleged invasions are "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 37 (1994). This standard sets a "high bar" to exclude *de minimis* intrusions. *Belluomini v. Citigroup, Inc.*, No. 13-cv-1743, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013).

---

[10] *See also Magney v. Cnty. of Humboldt*, No. 17-cv-2389, 2018 WL 1156817, at *4 (N.D. Cal. Mar. 5, 2018) (claims held untimely where "Plaintiff's complaint fails to allege that any specific act or conduct occurred within the statute of limitations period"); *O'Donnell v. U.S. Bancorp Equipment Finance, Inc.*, No. 10-cv-0941, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) ("O'Donnell has nonetheless failed to satisfy the pleading requirements of [Rule] 8 because she has not alleged any dates in her complaint.").

[11] In addition to requiring a "legally protected privacy interest," intrusion upon seclusion requires "a reasonable expectation of privacy" which is intruded in a manner highly offensive to a reasonable person," while invasion of privacy requires "a reasonable expectation [of] privacy" and an "intrusion is so serious as to amount to an egregious breach of the social norms." *Hammerling*, 615 F. Supp. 3d at 1088.

"Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Id*. When, as here, allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

There "is no reasonable expectation of privacy when the data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling*, 615 F. Supp. 3d at 1089; *see also Zynga*, 750 F.3d at 1108 (no "expectation of privacy" in "record information" like "the address of the Facebook webpage the user was viewing" or a user's "name, address, and subscriber name or identity"); *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) ("web chats, "emails," and a user's "mouse movements" and "clicks" for "URLs of webpages" is "a far cry from the type of data that supports a finding of a reasonable expectation of privacy"), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025); *Carolus v. Nexstar Media Inc.*, No. 24-cv-7790, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (no privacy interest in intercepted IP addresses, browser and device data, and other metadata).

Further, "[t]he collection and disclosure of a user's browsing history and personal information on a public website is 'routine commercial behavior' and not 'highly offensive.'" *Cousin*, 681 F. Supp. 3d at 1126 (citation omitted); *see B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064, 1067 (C.D. Cal. 2024) (dismissing privacy claims where plaintiffs "used Defendants' Website for routine medical searches and inquiries"); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive); *Low*, 900 F. Supp. 2d at 1025 (same for browsing history); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same for unique device IDs and geolocation information); *Harrill*, 2025 WL 1635428, at *7 ("Disclosing a user's browsing history . . . does not plausibly reach the level of 'highly offensive' conduct [required] under either common law or the California Constitution.") (citation omitted); *see also DellaSala v. Samba TV, Inc.*, No. 25-cv-3470, 2025 WL 3034069, at *1, *5 (N.D. Cal. Oct. 30, 2025) (dismissing intrusion claims based on the collection of IP addresses and "private video-viewing data" for lack of "highly offensive" conduct).

This is especially true here where Plaintiff merely browsed on the Kohler Website for "products," *e.g.*, kitchen light fixtures (Compl. ¶ 84)—activity that carries no "increased privacy implications," unlike visits to

websites "involv[ing] healthcare" or other sensitive subject matters. *Brushfire Recs.*, 2025 WL 3692144, at *7 (quotation marks and citation omitted); *see also Posadas v. Goodyear Tire & Rubber Co.*, No. 23-cv-402, 2024 WL 5114133, at *7 (S.D. Cal. Dec. 13, 2024) (dismissing intrusion claim because the "complaint contains no factual allegations that Plaintiff disclosed intimate or sensitive personally identifiable information").

As shown in Section V(B), Plaintiff does not allege facts about the substance of any communication with the Kohler Website that was collected and disclosed after he opted out. This omission requires dismissal because Plaintiff fails to allege facts plausibly showing that (1) he had a reasonable expectation of privacy in the data allegedly collected after he opted out, and (2) any invasion was an egregious breach of social norms. *See Cousin*, 681 F. Supp. 3d at 1126 (dismissing invasion of privacy claim where "it is not clear" "what information [plaintiffs] shared with [defendant] that was subsequently obtained by [a third party]"); *Harrill*, 2025 WL 1635428, at *6 (dismissing privacy claims where plaintiff alleged in a "conclusory manner that she has a reasonable expectation of privacy in her communications with Defendants on the Website because such communications contain 'medical data'" and did not "allege facts describing any such 'medical data.'").

Plaintiff's claims also fail because he does not allege facts showing that any intrusion was intentional. "[Courts] ask first whether defendants '*intentionally* intrude[d], physically or otherwise, upon the solitude or seclusion of another," that is, into a place or conversation private to [plaintiff]." *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 231 (1998). "Even negligent conduct that leads to theft of highly personal information, including social security numbers, does not approach [the] standard of actionable conduct" and "thus does not constitute a violation of Plaintiffs' right to privacy." *In re iPhone*, 844 F. Supp. 2d at 1063.

Plaintiff alleges no facts showing that any purported disclosure of private information after he opted out was intentional. While Plaintiff repeatedly states that Kohler's conduct was "intentional" (*e.g.*, Compl. ¶ 118), alleging "a laundry list of hollow verbs [and adjectives] does not save the claim, and again, the factual allegations inadequately recite conclusory statements." *Ciero v. The Walt Disney Co.*, No. 17-cv-8544, 2018 WL 11352373, at *6 (C.D. Cal. May 21, 2018). All Plaintiff alleges is that Kohler either "knew" or "should have known" that Third-Party Cookies were still used after a user's opt-out request. Compl. ¶ 157. These are not facts that show Kohler knew—let alone *intended*—to capture opted-out users' information, and simple negligence cannot supply the requisite intent for either claim. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) ("plaintiffs have not adequately alleged intent, which is a necessary element of an invasion of privacy claim").

Thus, Plaintiff has not stated an invasion of privacy or intrusion upon seclusion claim.

**D. Plaintiff's Wiretapping Claim Under CIPA § 631 Fails.**

Section 631(a) of CIPA prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Super. Ct.*, 22 Cal.3d 187, 192 (1978). A "fourth basis for liability" exists for anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the other three Section 631(a) bases for liability. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). "[T]he first clause does not apply to internet communications," like Plaintiff's interactions with the Kohler Website alleged here. *Ramos II*, 2025 WL 2144837, at *3. Because Kohler is a "party" to Plaintiff's communications, it is exempt from direct liability, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021), Plaintiff alleges only a violation of the fourth basis by aiding and abetting third parties to violate the second and third clauses, *see* Compl. ¶ 134. Each aspect of this claim fails.

**1. Plaintiff Fails to Allege a Violation Of Section 631(a)'s Second Clause Because He Fails to Allege the "Contents" of His Communications Were Intercepted While "In Transit."**

This claim fails for <u>two</u> reasons: Plaintiff fails to allege facts showing (i) the "content" of any intercepted communication, or (ii) that any interception happened "in transit."

**a. Plaintiff Alleges No "Contents" of a Communication.**

Section 631(a) only prohibits the unlawful interception of the *contents* of a communication. *Brodsky*, 445 F. Supp. 3d at 127. The "contents" of a communication are the "intended message conveyed by the communication," which is distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication." *Zynga*, 750 F.3d at 1106.[12] "[C]ourts must consider whether the intercepted information is information *about* a user's communication" or "the communication itself. . . . Only the latter is protected under CIPA" *Ramos v. Gap, Inc.*, No. 23-cv-4715, 2024 WL 4351868, at *4 (N.D. Cal. Sept. 30, 2024) ("*Ramos I*") (Gilliam, J.) (citation and quotation marks omitted).

Non-actionable "record information" includes usernames, passwords, "keystrokes, mouse clicks, pages

[12] *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, . . . key presses, page navigation," and "network requests" are "akin to the 'record' information that the Ninth Circuit has held not to be contents of a communication."); *Hammerling*, 615 F. Supp. 3d at 1093 ("URLs are record information when they only reveal a general webpage address and basic identification information, but when they reproduce a person's personal search engine queries, they are contents.").

viewed, and shipping and billing information . . . [and] the date and time of the visit, the duration of the visit, [p]laintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021). Section "631(a)[ii] protects only the internal, *user-generated* material of a message, not routine identifiers . . . ." *Id*. Record information also includes "the address of the webpage from which the user's HTTP request to view another webpage was sent" and URLs that include "basic identification and address information," *Zynga*, 750 F.3d at 1107, 1109.

Plaintiff fails to identify any communication that was intercepted, let alone facts showing its content. *Supra*, Section V(B); *see Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023) (dismissing plaintiff's CIPA claim even though she "allege[d] that she communicated with Taro" because courts "will not assume out of whole cloth what the contents of any communications were."). Plaintiff's allegations that he browsed for information on "Kohler's products" and that tracking technologies collected these interactions with the Kohler Website does not state a claim. Compl. ¶ 84. For example, in *Harrill* and *Beltran*, the court found plaintiffs failed to state a CIPA § 631 claim despite allegations that plaintiffs typed "search terms" in the "search bar" on defendants' websites because plaintiffs did not "not specify or describe the searches [plaintiffs] conducted on the Website[.]" 2025 WL 1635428, at *10; 2025 WL 1635467, at 10.

Here, the case for dismissal is even stronger than in *Harrill* and *Beltran* because Plaintiff does not allege typing *anything* on the Kohler Website or running any search terms. The Complaint "is devoid of any allegation describing [his] search queries, if any." *King*, 2025 WL 1635419, at *4. At most, Plaintiff's generic allegation that he browsed for "Kohler's products" (Compl. ¶ 84) shows only the collection of the "location of [the] webpage[s] [Plaintiff] [was] viewing," which is not "contents." *Zynga*, 750 F.3d at 1107; *see also Ramos II*, 2025 WL 2144837, at *4 (dismissing CIPA claims because "the Ninth Circuit held" that a "user's Facebook ID and the [URL] address of the Facebook webpage the user was viewing" is not "protected content"). Similarly, "button clicks" to view different product webpages are also "record information that the Ninth Circuit has held not to be contents of a communication." *King*, 2025 WL 1635419, at *4 (dismissing CIPA claim).

Therefore, Plaintiff "has failed to allege that [the third parties] eavesdropped on protected contents under section 631(a)." *Heiting*, 709 F. Supp. 3d at 1018; *see also Wright v. TrueCare Prop. Holdings, LLC*, No. 25-cv-786, 2025 WL 3248749, at *3 (S.D. Cal. Nov. 21, 2025) (dismissing CIPA claim for lack of "contents" because "Plaintiff's allegation that she accessed Defendant's website is mere record information, and her

allegation that her Facebook ID was associated with her visits is mere identifying information").

**b. Plaintiff Fails to Allege an "In Transit" Interception.**

Plaintiff's Section 631(a) claim also fails because there are no facts plausibly showing an interception "while in transit." An interception is actionable under Section 631(a) only if a plaintiff alleges the eavesdropping occurred "while the [communication] is in transit. . . . 'While' is the key word here." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (dismissing Section 631(a) claim because allegation that defendant's code "allows the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of Defendant's chat communications" was "entirely speculative"). To plausibly allege an interception while "in transit," a party must have intercepted the communication during its transmission, rather than once it was placed in electronic storage." *Heiting*, 709 F. Supp. 3d at 1018; *see Crano v. Sojern, Inc.*, No. 25-cv-2600, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) ("[T]he crucial question under § 631(a)'s second clause is whether [Plaintiff] has plausibly alleged that [a third party] read one of [his] communications while it was still in transit, *i.e.*, before it reached its intended recipient.") (citation and quotation marks omitted).

The weight of authority shows that Plaintiff cannot satisfy this requirement by making generalized allegations. *See Heiting*, 709 F. Supp. 3d at 1019 ("[G]reater details about the nature of the interception" must be alleged.); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (dismissing claim because allegation that "'the third party . . . secretly intercept[s] (during transmission and in real time)' is conclusory and does not allege specific facts as to how or when the interception takes place"). Plaintiff alleges nothing about how or when his communications were purportedly intercepted. He offers a generic allegation that the Third-Party Cookies "track and collect data in real time[.]" *E.g.*, Compl. ¶ 3. Rule 8, however, requires facts, not conclusions masquerading as facts. "Plaintiff has not added any additional factual details to make clear when the interception occurred," and this deficiency alone requires dismissal. *Heiting*, 709 F. Supp. 3d at 1019.[13]

Plaintiff fails to allege an "in transit" interception for yet another reason: "Even if [the] software intercepts the contents of Plaintiff['s] communications in real time," Plaintiff must—but fails to—allege facts

[13] *See also Adler v. Community.com, Inc.*, No. 21-cv-2416, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) ("[T]here is no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received."); *Crano*, 2025 WL 2689267, at *7 (allegations that a website uses "code to commandeer the user's computing device, causing the device to . . . re-direct the user['s] . . . communications to third parties" did not plausibly allege an "in transit" interception); *compare with Valenzuela v. The Kroger Co.*, No. CV 22-6382, 2024 WL 1336959, at *2 (C.D. Cal. Mar. 28, 2024) (complaint plausibly alleged in transit interception, alleging consumer chats were intercepted when "routed through" the third party's servers "*before* [defendant] received them") (emphasis in original).

that "plausibly indicate[ ] that [a third party] *reads or attempts to read* the contents of the communication *while they are in transit*." *Torres v. Prudential Fin., Inc.*, No. 22-cv-7465, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025). (emphasis added). "[T]he in-transit requirement [is] not satisfied when a third-party company intercept[s] communications and store[s] them in a server because the company d[oes]n't actually read or attempt to read the communications while they were in transit." *Eating Recovery Ctr.*, 2025 WL 2971090, at *5. Put another way, "you have to do something more than just intercept the contents of the communication or redirect them to yourself during the virtually infinitesimal amount of time it takes for the communication to travel from the website visitor to the website operator." *Id.*; *accord Ramos II*, 2025 WL 2144837, at *6 n.4 (one of "several flaws" in Plaintiff's case is "it is not clear how Bluecore could still be said to have read the contents of the email 'while the same is in transit' as required under CIPA").

Here, Plaintiff's interactions with the Kohler Website are first allegedly "routed" to the "[t]hird [p]arties' servers" thereby allowing the third parties to then "use" the data, Compl. ¶¶ 137, 139, and so any action taken by the third parties to analyze, or "read," those interactions does not occur while they are "in transit." *Eating Recovery Ctr.*, 2025 WL 2971090, at *5. Plaintiff's CIPA § 631 claim must be dismissed for this reason as well.

**2. Plaintiff Also Does Not Allege a Violation of Section 631(a)'s Third Clause, Which Requires Facts Showing a Violation of the First or the Second Clause.**

Plaintiff has not alleged a violation of the third clause of Section 631(a) because he does not allege a "violation of clauses one or two." *Crano*, 2025 WL 2689267, at *7.

**3. Plaintiff Does Not Allege Facts Showing That Kohler Aided And Abetted Anything.**

Plaintiff's Section 631(a) claim is based on the notion that Kohler somehow aided and abetted third-party software vendors' violations of the second or third clauses. Compl. ¶¶ 132-137. To show aiding and abetting, Plaintiff must logically allege facts showing a direct violation of Section 631(a). *See, e.g.*, *Keurig*, 674 F. Supp. 3d at 759. Plaintiff alleges nothing showing a violation and thus has no claim for aiding and abetting. *See Cody v. Ring LLC*, No. 23-cv-562, 2025 WL 240763, at *4 (N.D. Cal. Jan. 16, 2025) ("to succeed on a claim under Section 631(a)'s fourth clause, [plaintiff] must sufficiently plead a violation by [the software vendor] of one of Section 631(a)'s first three clauses for which [defendant] could be held liable").

This claim also fails because no facts show intent. Plaintiff must allege facts plausibly showing that Kohler "(a) knows [the third-party vendors'] conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to [the third-party vendors] in

accomplishing a tortious result and [Kohler's] own conduct, separately considered, constitutes a breach of duty to [Plaintiff]." *Kroger Co.*, 2024 WL 1336959, at *4. Simply "allow[ing]" a third party to "captur[e]" data is not enough, as such conduct "is not necessarily a Section 631(a) violation." *Id*. Rather, Plaintiff must "allege facts demonstrating [d]efendant acted with the requisite knowledge or intent to aid and abet [the third party's] purported CIPA violation." *Heiting*, 709 F. Supp. 3d at 1019.

Initially, any third-party tracking of information about a user's mere arrival to the Website is not an underlying violation of CIPA § 631, since a mere page view is not "contents" protected under the statute. *See*, *e.g.*, *Zynga*, 750 F.3d at 1107. As for any subsequent browsing, Kohler *did* in fact implement a cookie banner on the Kohler Website to inform users of the third-party tracking and offer users a mechanism to opt out of tracking. While Plaintiff alleges that the Kohler Website continued to transmit Third-Party Cookies after a user's opt-out, he provides only conclusory allegations that Kohler "knew, or should have known," that the Kohler Website's "programming allowed the third-party cookies to be placed on Website users'. . . browsers" after they clicked to "Reject All" cookies. Compl. ¶ 157. These allegations are not facts. Plaintiff does not allege anything showing that Kohler intended (or was even aware of) the alleged subsequent launch of cookies.

Plaintiff thus fails to show "sufficient *facts*" that Kohler "knew" the alleged third-party "perpetrator[s] intended to commit the crime and intended to aid and abet [the third parties] in committing the crime." *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102, 2024 WL 3761293, at *2, *3 (S.D. Cal. Aug. 5, 2024) (emphasis added) ("Plaintiff's interpretation of clause four ignores the criminal nature of section 631, and the aiding and abetting principles applicable to criminal statutes."). With no "factual allegations, no plausible inference can be drawn that [Kohler] knowingly aided or assisted [third parties], in violation of § 631(a)." *Smith v. YETI Coolers, LLC*, No. 24-cv-01703, 2025 WL 877127, at *2 (N.D. Cal. Mar. 14, 2025); *see also Kroger Co.*, 2024 WL 1336959, at *4 (plaintiff "fail[ed] to include plausible allegations . . . explaining how [defendant] knew [third-party vendor] Emplifi's conduct constituted a breach of [Section 631(a)]").

**E. Plaintiff's Pen Register Claim Under CIPA § 638.51 Fails.**

Plaintiff's CIPA § 638.51 claim fails for <u>three</u> reasons: (i) as alleged, the Third-Party Cookies are capable of capturing "contents," which means they fall outside the statutory definition of a "pen register"; (ii) third-party scripts deployed on a website are not pen registers, as shown by CIPA's legislative history and text; and (iii) CIPA cannot prohibit a website's use of third-party scripts to collect and share information that

is necessarily transmitted to it by its visitors.

**1. The Third-Party Cookies Can Acquire "Contents" and, Thus, Are Not Pen Registers.**

Contradicting his allegations that the Third-Party Cookies acquire a communication's "contents" in violation of CIPA § 631,[14] Plaintiff alleges that the cookies are also "pen registers" in violation of CIPA § 638.51, even though the definition of a pen register expressly *excludes* technology that can record the "contents of a communication." Cal. Penal Code § 638.50(b) ("Pen Register" means "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . , but not the contents of a communication."); *see Segen v Rickey*, No. C07–02917, 2008 WL 590505, at *4 (N.D. Cal. Feb. 29, 2008) ("While pleading in the alternative is allowed, Plaintiff cannot plead contradictory versions of facts.").

"By definition," a pen register "captures identifying information *about* a communication '*but not the contents* of a communication.'" *Kishnani*, 2025 WL 1745726, at *4 (citation omitted; emphasis in original) (dismissing CIPA § 638.51 claim because the software allegedly can capture "the content" of a "communication between [a] visitor and [the] Website"). "[C]rystaliz[ing] the futility of Plaintiff's suit" is "the distinction" that, "[i]f [a third party] only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded" and, "[i]f [a third party] instead collects content information," then "§ 638.50 does not apply." *Id.* at *5; *see Mitchener*, 2025 WL 2272413, at *5 (same); *Casillas v. Calvin Klein, Inc.*, No. 25STCV04499, 2025 WL 3529009, at *1 (Super. Ct. Nov. 25, 2025) (holding same because the complaint alleged "that the pixel captured contents of communications"); *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Super. Ct. Apr. 1, 2025) ("[T]he crucial distinction from other devices is that both 'pen registers' and 'trap and trace devices' are designed to capture information about the communication, but not the content of the communication itself."); *see also Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) ("pen registers and trap and trace devices, by definition, do not record 'the contents of any communication'") (citation omitted). Plaintiff's CIPA § 638.51 claim must be dismissed for this reason.

**2. CIPA § 638.51 Applies Only to Tracking Technology Used on Telephones.**

Both the legislative history surrounding CIPA's pen register statute, as well as the text and structure of the statute, show that § 638.51 applies only to tracking technology on telephone lines, not website scripts.

***First***, California's legislature enacted CIPA's pen register statute for a *singular* purpose: to create a

[14] To be clear, none of the data allegedly acquired from Plaintiff was the "contents" of a communication in violation of CIPA § 631. *Supra*, Section V(D)(1)(a).

framework governing how "law enforcement officers" could obtain orders "to use pen registers and trap and trace devices *in telephone surveillance* . . . ." *E.g.*, Declaration of Nina D. Boyajian in Support of Request for Judicial Notice ("Boyajian Decl. ISO RJN"), Ex. 3 at 1 (Assem. Comm. on Approps. Bill Analysis, Assembly Bill 929, 2015-2016 Reg. Sess. ("AB 929"), 4/29/2015) (emphasis added);[15] *see also Casillas v. Trans. Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *2 (Super. Ct. Sep. 9, 2024) (dismissing CIPA § 638.51 claims because AB 929 was never intended to "address the privacy rights of Internet users."); *see Scharon v. Paramount Glob.*, No. 25STCV10585, 2025 WL 2996812, at *2 (Super. Ct. Oct. 03, 2025) (holding same because the legislative intent behind AB 929 was "to govern installation of pen registers and trap and trace devices on telephones," and "not on other devices that might access the internet").

***Second***, and further reinforcing the Legislature's uniform focus on telephone surveillance, the statutory scheme of CIPA § 638.51 confirms it applies only to technology used on telephone lines, not website code. Section 638.51 prohibits the use of a pen register or a trap and trace device "without first obtaining a court order pursuant to Section 638.52," but CIPA § 638.52 adopted the "same authorization provision" that courts have relied on under the pre-2001 amendments to the federal Pen Register Act to find that "the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect IP addresses from a desktop computer." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Super. Ct. Jan. 27, 2025).[16] Corresponding precisely to the telephone-based requirements in the original 1986 Pen Register Act, the "requirements" for the permitted use of a trap and trace device under § 638.52, CIPA's authorization provision,

---

[15] Before AB 929, California law was silent on law enforcement's use of these telephonic tools, and the bill merely closed that narrow gap. Boyajian Decl. ISO RJN, Ex. 4 at 3 (Assem. Floor Bill Analysis, AB 929, 7/6/2015) ("AB 929 would authorize state and local *law enforcement officers* to use pen register[s]," which allow "officers to record all outgoing numbers from a *particular telephone line*."); *id.*, Ex. 5 at 4 (Assem. Comm. on Privacy and Consumer Protection Bill Analysis, AB 929, 4/29/2015) ("[t]his bill is intended to authorize state and local *law enforcement* to seek emergency orders for pen registers . . . *used in telephone surveillance*").

[16] The provisions of CIPA enacted by AB 929 are patterned on various versions of the federal Pen Register Act, 18 U.S.C. §§ 3121–3127, including CIPA § 638.51, the prohibition on the use of a pen register "without first obtaining a court order pursuant to [§] 638.52[.]" Cal. Penal Code § 638.51(a). Section 638.52, in turn, reads: A magistrate "shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device," and such an order "shall specify" the owner, number, and location of the "*telephone line*" to which the device is "attached." Cal. Penal Code § 638.52(b), (d) (emphasis added). Section 638.52 corresponds nearly *verbatim* with 18 U.S.C. § 3123 as that federal statute was written ***before its amendment in 2001***—language that had already been held to be limited to telephone lines. *Compare* Cal. Penal Code § 638.52 *with* Pub. L. 99-508 § 301(a) (Oct. 21, 1986); *see Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 199, 200 (C.D. Cal. 1995) (holding pre-amended Pen Register Act only prohibited the use of devices that are attached to a telephone). When AB 929 was enacted in 2015, the Pen Register Act had already been amended to extend beyond telephone lines to any "*other facility*" to which a pen register or trap and trace may be attached or "*applied*." 18 U.S.C. § 3123(b)(1)(A) (emphasis added).

show that "[S]ection 638.51 applies to telephone lines, not websites, because websites do not have lines, physical locations, or numbers." *Scharon*, 2025 WL 2996812, at *1 (citing Cal. Penal Code § 638.2(d)). Because the authorization provision only applies to telephone lines, the corresponding prohibition on such devices must also be limited to devices "attached to a telephone line"; otherwise, no order authorizing a pen register for non–"telephone line"–based surveillance could ever issue. *Cellular Tel.*, 885 F. Supp. at 200.

When the Legislature enacted California's pen register statute in 2015, it deliberately chose to adopt the narrow language of the 1986 Pen Register Act examined in *Cellular Tel.*, 885 F. Supp. 197—even though, in 2001, Congress had enacted a broader version of the federal act to reach more than just telephonic tracking. This narrow word choice by the Legislature "cannot be assumed to be inadvertent." *Id.*; *see People v. Williams*, 17 Cal. 5th 99, 128-29 (2024) ("Congress normally can be presumed to have had knowledge of the interpretation given to [an] incorporated law, at least insofar as it affects the new statute.'") (citation omitted). Thus, California's statute, which must be read "to fit harmoniously as part of a symmetrical and coherent statutory scheme," shows the prohibition does not apply to the web-based code that forms the basis for Plaintiff's claim here. *Rodriguez v. Holder, Jr.*, 619 F.3d 1077, 1079 (9th Cir. 2010) (citation and quotation marks omitted).[17]

***Finally***, because CIPA is a criminal statute, any "ambiguity in [the] criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *People v. Reynoza*, 15 Cal. 5th 982, 1012 (2024) (quotation marks and citations omitted). The rule of lenity applies to CIPA "even when the statute is being invoked in a civil action." *Eating Recovery Ctr.*, 2025 WL 2971090, at *1 (citing *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154 (2001)).

**3. CIPA § 638.51 Does Not Bar a Website's Collection of Its Users' Information.**

Plaintiff also fails to state a claim under CIPA § 638.51 because "'the collection of incoming [addressing information] by [a website operator] is exempt' from penalty" since website operators "necessarily capture such data . . . to operate the website." *Trans. Optical*, 2024 WL 4873370, at *5 (quoting *Bunnell*, 2007 WL 2080419, at *11). This commonsense rule holds true even where the alleged collection is done by a "secretly installed" tracking script. *Id.* at *1. California courts have thus rejected that "tracking software" used to acquire a visitor's

[17] As a result of abusive lawsuits filed under CIPA, it is not surprising that the California Senate passed Senate Bill 690 ("SB 690") in 2025, which aims to "stop[]" these "shake down lawsuits for standard online business activities" against "businesses and nonprofits under [CIPA]" that are "already regulated by the California Consumer Privacy Act (CCPA)." Boyajian Decl. ISO RJN, Exs. 1 at 9, 2 at 6. SB 690 is currently being held in committee by the California Assembly for deliberation in 2026 and, if passed, will become law later this year.

"outgoing information" transmitted to a website is an unlawful pen register. *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *2, *4 (Super. Ct. Mar. 13, 2024) (dismissing § 638.51 claim because plaintiff's interpretation "render[s] every single [website] voluntarily visited by a potential plaintiff . . . as a violator"). This "law enforcement tool" used "to record what numbers have called a specific phone line . . . is a far cry from the situation here," where Plaintiff "intentionally cho[se] to contact [the] website and [Kohler] is learning the identity of the person contacting it." *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 Cal. Super. LEXIS 41697, at *8 (Super. Ct. Jul. 9, 2025). If "CIPA broadly prohibits any process by which anyone identifies any 'originating number,'" then untenably, "every website interaction that identifies electronic information about the user in a manner that allows the website to function" would be a prohibited pen register, *id*. at *7-8—an outcome prohibited by common sense and the rule of lenity.

**F. Plaintiff's Fraud, Deceit, and/or Misrepresentation Claim Fails.**

Plaintiff strategically seeks to avoid an early dismissal of his meritless CIPA claims by adding a claim for fraud, deceit, and/or misrepresentation. But these claims, too, fail. Common law fraud in California requires "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (emphasis removed). When brought in a federal action, "a party must state with particularity the circumstances constituting fraud," and "[a]ny averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Id*. at 1124. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id*. Conclusory allegations, like those alleged by Plaintiff, are insufficient. *See Doutherd v. United Parcel Serv., Inc.*, No. 21-15966, 2022 WL 17582527, at *1 (9th Cir. Dec. 12, 2022).

***First***, Plaintiff fails to allege his fraud claim with particularity, as Rule 9 requires. Plaintiff does not specify the date he was exposed to Kohler's alleged misrepresentations. *Supra*, Section V(B); *see In re Zoom Video Communs. Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (dismissing fraud-based claims; no allegation of a "date on which any Plaintiff would have seen Zoom's alleged misrepresentations about privacy").

***Second***, Plaintiff has not alleged, and cannot allege, facts showing that, at the time of Plaintiff's alleged Kohler Website visit, Kohler knew that the "Reject All" button on the cookie banner was not immediately effective, as Plaintiff alleges (and as described above and in the Gallipeau Declaration, opt-out requests were

honored). *See In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. Jul. 1, 2021) (dismissing fraud-based claims; "the 3AC is void of facts that so much as suggest that . . . Google, at the time of the alleged misrepresentations, had the intent to mislead or omit material information"). All Plaintiff alleges is that Kohler "knew, or should have known," about the transmission of the Third-Party Cookies after a user opted out. *See* Compl. ¶ 157. These allegations are insufficient to state a claim under common law fraud. *See, e.g.*, *Hodes v. Van's Int'l Foods*, No. 09-cv-1530, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009) ("[M]erely conclusory" allegations of "scienter and intent to defraud" are insufficient to state a claim.).

***Third***, as shown, Plaintiff fails to allege loss or damage at all, let alone caused somehow by a misrepresentation allegedly made by Kohler on the Websites. *Supra*, Section IV(C).

## VI. CONCLUSION

"The state of affairs with CIPA is untenable. Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability . . . . The California Legislature needs to step up. It would be bad enough if CIPA were merely a civil statute that allowed plaintiffs to recover actual damages for violations. But CIPA imposes criminal liability and punitive civil penalties. Under these circumstances, it is imperative for the Legislature to bring CIPA into the modern age and to speak clearly about how the kinds of activities at issue in this case should be treated. Until that happens, courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Eating Recovery Ctr.*, 2025 WL 2971090, at *1.

Kohler respectfully requests that the Court dismiss the Complaint without leave to amend.

Dated: January 8, 2026

GREENBERG TRAURIG, LLP

By: /s/ *Nina D. Boyajian*
Nina D. Boyajian
Attorneys for Defendant Kohler Co.